UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
                               :

MARILYN BLANCO, et al.,            :

                               :

              Plaintiffs,       :

                               :         23-cv-01652 (LJL)

     -v-                   :

                               :       OPINION AND ORDER

SUCCESS ACADEMY CHARTER SCHOOLS, INC., et :
al.,                                :

                               :

             Defendants.    :
                               X

-----------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

Defendants Success Academy Charter Schools, Inc., ("Success Academy"), Success

Academy Charter School Harlem 2 ("Harlem 2"[1]), Success Academy Chief Executive Officer

("CEO") Eva Moskowitz ("Moskowitz"), and Harlem 2 Principal Amelia Cohen ("Cohen"),

(collectively, "Defendants"[2]) move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to

dismiss the Second Amended Complaint ("SAC") for failure to state a claim for relief.  Dkt.

No. 57.

For the following reasons, the motion to dismiss is granted in part and denied in part.

---

[1] Defendants refer to Success Academy Charter School Harlem 2 as Success Academy Charter
Schools – NYC.  Dkt. No. 57 at n. 1.  But Defendants do not assert that Success Academy
Charter School Harlem 2 was improperly named and should be dismissed on that basis.  For
purposes of this motion, the Court refers to Harlem 2.

[2] Plaintiffs also name four "John Does" in the caption of their Second Amended Complaint but
make no allegations about any of them.  *See* Dkt. No. 55.  Simply listing unidentified defendants
in a complaint's caption without making a single allegation as to their involvement in the
conduct at issue is insufficient to state a claim.  *See, e.g.*, *Antrobus v. New York City*, 2023 WL
6609443, at *6 n.4 (S.D.N.Y. Oct. 10, 2023) ("Any defendants named in the caption must also be
discussed in Plaintiff's statement of claim."); *Brown v. Annucci*, 2017 WL 1040416, at *4
(N.D.N.Y. Mar. 16, 2017); *see also Casino v. Rohl*, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23,
2014).

**BACKGROUND**

For purposes of this motion, the Court accepts as true the well-pleaded allegations of the SAC and all documents incorporated by reference.

Plaintiff I.B. ("I.B.") is a seven-year-old child with Attention Deficit Hyperactive Disorder ("ADHD"). Dkt. No. 55 ¶¶ 2, 7. Plaintiff Marilyn Blanco ("Blanco," and together with I.B., "Plaintiffs") is I.B.'s mother and legal guardian. *Id.* ¶ 6. Plaintiffs reside in the Bronx. *Id.* ¶¶ 6–7.

Harlem 2 is a public charter school located in the Harlem neighborhood of Manhattan, and is wholly controlled and operated by Success Academy, a non-profit corporation organized under the laws of Delaware that receives direct funding from the federal government and the State of New York and resources from the City of New York. *Id.* ¶¶ 1, 8–9. Success Academy operates 47 schools across New York City. *Id.* ¶ 8. Defendant Moskowitz is the CEO of Success Academy and Defendant Cohen is the Principal of Harlem 2 and an employee of Success Academy. *Id.* ¶¶ 10–11.

I.B. began kindergarten at Harlem 2 during the 2020–2021 school year. *Id.* ¶ 15. Like all students, I.B. attended the 2020–2021 school year remotely due to the COVID-19 pandemic. *Id.* I.B. began attending school in person for first grade the following school year. *Id.* ¶ 16.

Plaintiffs allege that beginning in December 2021, Defendants began a "campaign of harassment" against I.B. and Blanco, which included a series of suspensions. *Id.* ¶ 17. In February 2022, Blanco began seeking psychiatric help and a diagnosis for I.B. and on March 1, 2022, Blanco had a meeting with Harlem 2 Vice Principal, Alvarez, to discuss beginning the Individualized Education Program ("IEP") process for I.B. *Id.* ¶¶ 18–19.[3] Despite the repeated

---

[3] IEPs must be offered to students with disabilities to ensure they receive a free and appropriate public education as required under the Individuals with Disabilities Education Act ("IDEA"), 20

suspensions, I.B. was not barred from the classroom because children with disabilities may not be barred from classrooms until a Manifestation Determination Review ("MDR") occurs to determine if the behavior leading to the suspension is connected to the child's disability or the school's failure to follow the child's IEP. *Id.* ¶ 26. However, I.B. continued to accumulate suspensions and Plaintiffs allege that they increased in length and frequency in early 2022, including at least 6 suspensions in March 2022. *Id.* ¶¶ 19, 25, 27–28. The first MDR meeting was held on March 17, 2022, and it was determined that I.B.'s alleged misbehavior was not a manifestation of his disability. *Id.* ¶ 30. The following day, Cohen told Blanco that I.B. had accumulated 40 days of suspension thus far in the school year (though he had only accumulated 30 at that time) and that he must begin serving a 15-day suspension. *Id.* On March 31, 2022, another MDR was held and this time it was determined that I.B.'s alleged behavior was due to his disability. *Id.* ¶ 31. However, Cohen refused to stop the 15-day prior suspension I.B. was serving at that time. *Id.*

On April 8, 2022, I.B. was officially diagnosed with ADHD. *Id.* ¶ 32. Cohen and other staff at Harlem 2 were aware of his ongoing treatment and were immediately informed of the diagnosis. *Id.* Nevertheless, I.B. was given five-day suspensions on each of April 21, April 22, May 5, May 6, and May 9. *Id.* ¶ 33. An MDR was held on May 10, which found that the alleged misbehavior was due to I.B.'s disability and the suspensions were not served. *Id.* ¶ 36.

On April 22, 2022, Harlem 2 employees stated that I.B. would not be welcome back at the school until he was cleared to return by a psychiatric professional. *Id.* ¶ 34. The following day, Blanco took I.B. to Bellevue Hospital and he was cleared to return. *Id.*

---

U.S.C. §§ 1400 *et seq. See* Dkt. No. 55 ¶ 20.

Plaintiffs also allege that various Success Academy employees made disparaging remarks to Blanco, such as Harlem 2 Vice Principal Alvarez telling her that I.B. was not a "good fit" for the school and implying that he did not want I.B. back at the school, *id.* ¶¶ 22–23, 29, and Defendant Cohen telling her that I.B. "isn't normal," *id.* ¶ 27. A counselor at Harlem 2 also told Blanco that I.B. was "not normal." *Id.* ¶ 45.

On April 25, 2022, a Harlem 2 employee notified Blanco about an alleged behavior problem with I.B. Blanco went straight to the school and found I.B. surrounded by police officers and EMTs, trapped and unable to move about. *Id.* ¶ 35. Blanco then took I.B. immediately to Bellevue Hospital for observation where psychiatric professionals concluded that there was no need for police or EMT intervention nor for hospitalization. *Id.* I.B. was traumatized by the experience. *Id.*

On May 10, 2022, I.B. received his IEP which required that he be attended 1:1 by a paraprofessional while in school. *Id.* ¶ 37. On May 12, 2022, Cohen allegedly assaulted I.B. by poking him in the eye. *Id.* ¶ 38. The incident upset I.B. so much that he had to stay home from school the following day. *Id.* Harlem 2 cited I.B. for a uniform infraction the day he was absent from school. *Id.* ¶ 39. I.B. was suspended again on May 19, but a MDR held on June 6 determined that the alleged behavior was due to his disability. *Id.* ¶ 40–41.

I.B. began second grade in August 2022, but on the second day of school there was no paraprofessional present for I.B. in violation of his IEP. *Id.* ¶ 43. Plaintiffs allege that the absence of the mandated paraprofessional continued to occur frequently while I.B. continued to be accused of misbehavior and suspended. *Id.* ¶ 44. I.B. was suspended at least 20 times during the 2022-2023 school year. *Id.* ¶ 46. All post-suspension MDRs that year found that the behavior was a manifestation of I.B.'s disability. *Id.* ¶ 47. Plaintiffs allege that the continued

4

suspensions were harassment by Success Academy intended to push I.B. out of the school.  *Id*. On October 18, 2022, Blanco filed a complaint against Harlem 2 for consistently failing to provide the mandated paraprofessional, which was substantiated.  *Id*. ¶¶ 51, 56.

In September 2022, Blanco went to Harlem 2 to give I.B. medication for his disability, which was the only time Blanco had ever forgotten to give him his medication at home.  *Id*. ¶ 48. Cohen then suggested that the school administer I.B.'s medication.  *Id*. ¶ 49.  Cohen continued to imply that Blanco was not giving I.B. his medication.  *Id*. ¶¶ 53–54.

During October 2022, I.B. was bullied by other students at Harlem 2.  Staff at Harlem 2, including Principal Cohen, were aware of the bullying but allegedly took no or grossly insufficient action to protect I.B.  *Id*. ¶ 50.

Blanco was notified that a complaint had been filed with the New York Administration for Children's Services ("ACS") against her that originated with Harlem 2.  *Id*. ¶¶ 54–55. Blanco alleges that the implication that she was not giving I.B. his medication was used as a pretext to file a false ACS complaint against her, which Cohen either initiated or allowed to continue.  *Id*. ¶¶ 54, 55, 79, 84–85.  Blanco also alleges the ACS report was submitted in retaliation for her filing a complaint about the absence of the paraprofessional required by I.B.'s IEP.  *Id*. ¶ 56.

On January 6, 2023, Cohen caused 911 to be called again on I.B. and caused I.B. to be surrounded by NYPD officers and EMS.  *Id*. ¶ 57.  On February 17, 2023, Cohen told Blanco that 911 was called again due to I.B.'s behavior and NYPD and EMS again responded to Harlem 2.  *Id*. ¶ 58.  Blanco informed Cohen that she was on her way to the school but when she arrived, I.B. had already been taken to Harlem Hospital.  I.B. was cleared and released from Harlem Hospital within hours.  *Id*. ¶ 59.  Harlem 2 staff called 911 again on February 22, but I.B.'s father

arrived at the school to pick him up prior to the arrival of the police and EMS. *Id.* ¶ 60. On

April 3, 2023, Harlem 2 staff again called 911 and when Blanco arrived, NYPD, FDNY, and

EMS were at the school. *Id.* ¶ 61. Harlem 2 staff called 911 again on April 13, 2023, and I.B.

was released into Blanco's custody when she arrived. *Id.* ¶ 62. On April 24, 2023, Harlem 2

staff caused I.B. to be taken to the hospital without informing Blanco. *Id.* ¶ 63. I.B. was cleared

and discharged. *Id.* In total, emergency services were called eight times on I.B. and in each case

that Harlem 2 caused I.B. to be sent to the hospital because he was allegedly a danger to himself

or others, hospital medical professionals cleared him for discharge because he posed no such

risk. *Id.* ¶¶ 64–65. However, Cohen continued to tell Blanco that I.B. was a high risk to cause

serious harm or even death to himself or others. *Id.* ¶ 65.

Ultimately, on April 27, 2023, Success Academy filed a request to the State Department

of Education and the Office of Administrative Trials and Hearings to remove I.B. from the

school. *Id.* ¶ 67. In May 2023, Blanco removed I.B. from Success Academy and Harlem 2. *Id.*

¶ 68.

## PROCEDURAL HISTORY

Plaintiffs initiated this action on February 27, 2023. Dkt. No. 1. On May 19, 2023,

Defendants filed a motion to dismiss. Dkt. No. 29. In response, Plaintiffs filed their First

Amended Complaint ("FAC") on June 14, 2023, rendering the motion to dismiss moot. *See* Dkt.

Nos. 35, 39. The FAC asserted six claims: (1) discrimination against I.B. in violation of § 504 of

the Rehabilitation Act against Success Academy and Harlem 2; (2) false imprisonment against

Cohen and Vice Principal Alvarez under 42 U.S.C. § 1983 and New York state law,

(3) intentional infliction of emotional distress against all Defendants; (4) abuse of process against

unspecified defendants under 42 U.S.C. § 1983 and state law; (5) municipal and supervisory

liability under 42 U.S.C. § 1983 against Success Academy and Moskowitz; and (6) *respondeat superior* against unspecified defendants.  Dkt. No. 35 ¶¶ 71–119.

On June 23, 2023, Defendants filed a motion to dismiss all causes of action in the FAC except the first cause of action for discrimination.  Dkt. Nos. 41–42.  Plaintiffs opposed the motion on July 12, 2023, Dkt. Nos. 43–44, and Defendants filed a reply on July 24, 2023, Dkt. No. 48.

On March 6, 2024, the Court granted Defendants' motion to dismiss without prejudice to Plaintiffs filing an amended complaint within thirty days of the Court's order.  Dkt. No. 54.  Plaintiff then filed the SAC on April 2, 2024.  Dkt. No. 55. [4]  The SAC repeats the first cause of action against Success Academy and Harlem 2 for discrimination against I.B. in violation of § 504 of the Rehabilitation Act.  *Id*. ¶¶ 70–77.  The SAC states a second cause of action for intentional infliction of emotional distress ("IIED") against Cohen.  *Id*. ¶¶ 78–89.  On April 16, 2024, Defendants moved to dismiss the IIED claim and to dismiss Moskowitz and John Does #1–4 as defendants.  Dkt. No. 57.  Plaintiffs filed an opposition to the motion to dismiss on April 30, 2024, Dkt. No. 58, and Defendants filed a reply memorandum of law in further support of their motion to dismiss on May 7, 2024, Dkt. No. 59.[5]

---

[4] Plaintiffs do not repeat their claims against Alvarez nor do they reallege the previously dismissed claims for false imprisonment, abuse of process, or municipal and supervisory liability.

[5] Paragraphs 90–92 of the SAC are labeled "Respondeat Superior" and state that Defendants' acts were undertaken within the scope of their employment by Success Academy and in furtherance of Success Academy's business.  However, it is unclear to which Defendants these paragraphs refer.  As the Court described in its prior opinion, *respondeat superior* is not a standalone cause of action but a theory that must attach to another claim.  *See* Dkt. No. 54 at 51; *see also Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011).  The only remaining individual defendant is Cohen, against whom the IIED claim is brought, but the SAC does not purport to bring a cause of action for IIED against Success Academy.  *See* Dkt. No. 55 at ECF p. 12.  Thus, the SAC does not state any claims that would require a *respondeat superior* theory and therefore the Court does not discuss it.  To the extent that Plaintiffs intend

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).  When adjudicating a motion to dismiss under Rule 12(b)(6), the court considers not only the well-pleaded allegations of the complaint but documents incorporated by reference and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020).

**DISCUSSION**

Defendants move to dismiss Plaintiffs' claim for intentional infliction of emotional distress for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos.

---

Paragraphs 90–92 to state a separate claim against Success Academy either for *respondeat superior* or for IIED, that claim is dismissed.

56–57. Defendants also move to dismiss Moskowitz as a defendant because there are no allegations against her in the SAC. *Id*.

## I. Dismissal of Moskowitz

Moskowitz is not mentioned in the SAC except in the case caption and preliminary section alleging the identity of the parties, which simply describes her as the CEO of Success Academy. Because there are no allegations against Moskowitz, she must be dismissed. *See, e.g.*, *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." (internal citations omitted)); *Antrobus*, 2023 WL 6609443, at *6 n.4 ("Any defendants named in the caption must also be discussed in Plaintiff's statement of claim."); *Rohl*, 2014 WL 5425501, at *6 (plaintiff had not adequately pleaded defendant's involvement in any of the allegations where defendant was nowhere mentioned or referenced in the body of the amended complaint).

## II. Intentional Infliction of Emotional Distress

New York law provides that to bring a claim for IIED, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). "These requirements, especially that of extreme and outrageous conduct, 'are rigorous and difficult to satisfy.'" *Moraes v. White*, 571 F. Supp. 3d 77, 104 (S.D.N.Y. 2021) (quoting *Howell v. N.Y. Post Co.*, 612 N.E. 2d 699, 701 (N.Y. 1993)). IIED is a "highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna Inc.*, 774 F.3d 140, 158 (2d

Cir. 2014); *see also Sesto v. Slaine*, 171 F. Supp. 3d 194, 202 (S.D.N.Y. 2016) (Nathan, J.) (noting that IIED claims are frequently dismissed on pre-answer motions).

To sustain an IIED claim, the conduct alleged must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*, 762 F. 2d 212, 220 (2d Cir. 1985); *see also Chanko v. Am. Broad. Cos. Inc.*, 49 N.E. 3d 1171, 1179 (N.Y. 2016); *Murphy v. Am. Home Prods. Corp.*, 448 N.E. 2d 86, 90 (N.Y. 1983). It is not enough that a defendant acted with malice, with intent to cause emotional distress, or even with tortious or criminal intent. *See* Restatement (Second) of Torts § 46 (2024). In addition, liability does not extend to insults, indignities, threats, or annoyances. *Id.* "'Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain' an intentional infliction of emotional distress claim because such conduct 'is not sufficiently outrageous.'" *Kinowski v. Home for Elderly Women of Montgomery Cnty., Inc.*, 2023 WL 4865531, at *13 (N.D.N.Y. July 31, 2023) (quoting *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011)); *see also Gadson v. City of New York*, 67 N.Y.S.3d 287, 288 (2d Dep't 2017) ("[T]he isolated incident of name calling by the [school] janitor, while unquestionably objectionable, did not rise to the level of extreme and outrageous conduct required to sustain such a cause of action."); *Stuto*, 164 F.3d at 827 (explaining that even malicious conduct is insufficient to state an IIED claim).

However, conduct may be "extreme and outrageous" where "there is a deliberate and malicious campaign of harassment or intimidation." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122–23 (2d Cir. 2019) (quoting *Scollar v. City of New York*, 74 N.Y.S. 3d 173, 178 (1st Dep't 2018) (Plaintiffs stated a claim for IIED where Fox News employees set out to take a

10

fringe conspiracy theory about a murdered 27-year-old Democratic National Committee staffer to mainstream media, including by recruiting another Fox employee to infiltrate the staffer's family and spread knowingly false information about his death despite knowing the harm it would do to his parents); *see Seltzer v. Bayer*, 709 N.Y.S. 2d 21, 23 (1st Dep't 2000) ("Those few claims of intentional infliction of emotional distress that have been upheld by this court were supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff."); *Cavallaro v. Pozzi*, 28 A.D. 3d 1075, 1078 (4th Dep't 2006) (triable issue of fact existed regarding outrageousness of defendant's conduct where defendant allegedly engaged in campaign of harassment against plaintiff, his ex-wife's current husband, including threatening to kill the plaintiff and his children and filing an affidavit in ongoing custody case stating that the plaintiff was engaging in extra-marital affairs and regularly viewed pornography in the home); *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876 (2d Cir. 1988) (plaintiff police sergeant stated IIED claim where defendants allegedly engaged in a campaign of harassment by conspiring to have plaintiff involuntarily transferred, harassing him and his wife, disseminating to fellow officers that the plaintiff was responsible for another officer's suicide, and denying him a promotion).  And under New York law, the proper inquiry is not merely whether an individual act might be outrageous, but whether the action in its totality amounted to a deliberate and malicious campaign.  *See Rich*, 939 F.3d at 123.  Moreover, "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests," and may also "arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress" and the conduct may "become heartless, flagrant, and outrageous where the actor proceeds in the face of such knowledge."  *Id*.

*See* Restatement (Second) of Torts § 46 (2024).  Police officers, school authorities, landlords and collecting creditors have been held liable for extreme abuses of their positions if the conduct is extreme and outrageous.  *Id*.  Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance.  *Stuto*, 164 F.3d at 827 (citing Restatement (Second) of Torts § 46 cmt. h (1965)).

In its ruling on the FAC, the Court concluded that Plaintiff failed to allege conduct by a single defendant that would satisfy the stringent standards under New York law for pleading a claim for IIED.  The Court stated that the "gratuitous conduct [alleged in the FAC], if engaged in by a single defendant or at the behest of a single defendant or together as a concerted action, would be sufficiently egregious to plausibly plead a claim for intentional infliction of emotional distress and for discovery to go forward."  Dkt. No. 54 at 35.  However, as to the individual defendants, Plaintiff did "not plead that the conduct was carried out or orchestrated by a single defendant or through a conspiracy of the individual defendants."  *Id.*[6]

In the SAC, Plaintiffs have addressed the shortcomings of the FAC.  Plaintiffs repeat the allegations from the FAC and add that Cohen personally suspended I.B. on at least 32 occasions, each time sending a letter to Blanco saying the school does its best to respect scholars and families and expects the same in return, while knowing that I.B.'s alleged misbehavior was a manifestation of his disability and that he was not receiving the paraprofessional assistance required by his IEP.  Dkt. No. 55 ¶¶ 44, 51, 79–80.  Further, the SAC more specifically claims that Cohen personally could have prevented I.B. from being removed from the school and taken to Harlem Hospital on February 17, 2023, after Blanco told Cohen she was on her way to the

---

[6] The Court held that "'claims of intentional infliction of emotional distress against government bodies are barred as a matter of public policy.'"  *Id.* at 35-36 (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 7 (1st Dep't 1999)).  Plaintiffs do not challenge that ruling here.

school, but Cohen chose not to do so. *Id*. ¶ 82. The SAC also states that without discovery, Plaintiffs cannot prove Cohen's direct involvement in all of the 911 calls but given her role as Principal of Harlem 2 it "can be easily inferred that such actions are not taken without her approval and that they are initiated or continued at her behest." *Id*. ¶ 83. Plaintiff also alleges more specifically that it "can be easily and plausibly inferred that Principal Cohen initiated or allowed" the ACS complaint against Blanco given their personal interactions about I.B.'s medication, which Blanco alleges formed the "groundwork" for the ACS complaint. *Id*. ¶¶ 84–85. The SAC also alleges that Cohen stated to Blanco that I.B. was a threat of serious harm to himself or others on multiple occasions despite that being untrue. *Id*. ¶ 86.

The revised allegations in the SAC, taken as true and drawing all reasonable inferences in Plaintiffs' favor, *see, e.g.*, *Chambers*, 282 F.3d at 152, contain enough facts "to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556.

It would not be enough for Plaintiffs to allege that I.B. was suspended on multiple occasions, that Cohen informed Blanco of the suspensions, and that, on virtually every occasion, a MDR concluded that I.B. need not serve his period of suspension. To sustain an IIED claim, the conduct must, among other things, be regarded as "utterly intolerable in a civilized society." *Martin*, 762 F. 2d at 220. Where the positive law of a community imposes a right or a duty on the defendant to engage in the conduct at issue, it cannot be regarded as intolerable in that society for the defendant to engage in that conduct, even if the defendant knows or recklessly disregards that the conduct will cause another person emotional distress. *See* Restatement (Second) of Torts § 46 cmt. g (2024) ("The actor is never liable, for example, where he has done no more than insist upon his legal rights in a permissible way, even though he is well aware that

13

such insistence is certain to cause emotional distress.)  *Cf. Doe v. Hill Sch.*, 2023 WL 5339610, at *7 (E.D. Pa. Aug. 18, 2023) (contrasting wide discretion given to schools to engage in standard discipline with unjustified harassment, debasement, or humiliation by school officials that may amount to IIED); *Suraci by and Through Suraci v. Hamden Bd. of Educ.*, 2019 WL 161501, at *2–3 (D. Conn. Jan. 10, 2019) (dismissing IIED claim against teacher where she had factual and reasonable basis for discipline against student and was required to take action to ensure school safety, even if in hindsight discipline could have been done in a less traumatic way for the student).

Schools act *in loco parentis* with respect to the children that are placed in their custody. Just as Success Academy and Harlem 2 had duties of care towards I.B., they also had a duty of care to all other students in the school to adequately supervise the students in their charge and to maintain a safe environment.  *See, e.g.*, *Boyle v. Brewster Cent. Sch. Dist.*, 209 A.D. 3d 619, 620 (2d Dep't 2022) (explaining that schools stand *in loco parentis* and have a duty to adequately supervise students in their charge); *Mirand v. City of New York*, 84 N.Y.2d 44 (N.Y. 1994) (affirming jury verdict in favor of plaintiffs where students were attacked by other students in the school and finding it was reasonable for jury to conclude school was negligent in its supervision).  The New York Education Law permits a school to suspend students who are insubordinate, disorderly, violent, disruptive, or whose conduct otherwise endangers the safety, morals, health, or welfare of others.  New York Educ. Law § 3214(3).  Those rules apply to students with disabilities and require the parent to be notified of a suspension.  *Id*.  The regulations limit the authority of the school district to require the student to serve a sentence of suspension if the conduct in question was caused by or had a direct and substantial relationship to the student's disability or was the direct result of the school district's failure to implement an

14

IEP. *See, e.g.*, 8 N. Y. Admin. Code §§ 201.4, 201.7 (school authorities have the authority to suspend disabled students and contemplating potential for a pattern of suspensions but describing that disabled students may only be removed under certain circumstances). But they do not relieve the school district of the responsibility (and the right) to issue the suspension and to inform the parents of their student's behavior. Here, for example, the attachments to the SAC reflect that I.B. was suspended on October 6, 2022, for trying to run out of the recess yard without adult supervision, and other disruptive behavior, Dkt. No. 55-1 at ECF p. 3, and on April 26, 2023 for unsafe behavior by punching his substitute paraprofessional, and attempting to overturn desks, chairs and other large office furniture, Dkt. No. 55-1 at ECF p. 1. If the SAC's allegations were limited to Cohen's conduct in issuing suspensions, even in the face of a MDR determination that I.B.'s conduct was a manifestation of his disability and even with the knowledge that the notices of suspension would cause emotional distress to I.B. and to Blanco, the Court would have little difficulty dismissing the claim.

But the allegations are not so limited. Plaintiffs allege that Cohen's conduct took place over two school years, and involved, among other things, continuous suspensions, calling the police and EMTs eight times to respond to the behavior of a six-year-old, poking I.B. in the eye, refusing to prevent I.B. from being bullied, and causing I.B. to be involuntarily sent to the hospital against his parent's wishes. Dkt. No. 55 ¶¶ 38, 50, 59, 64. All of that conduct occurred while Cohen was aware that I.B. had a disability, that I.B.'s behavior was a manifestation of his disability, and that the school was not providing him with the services he needed for that disability, which may have ameliorated the behavioral issues, and to which he was entitled under his IEP. *Id.* ¶¶ 31–32, 36, 41, 44, 47. Plaintiffs allege that this conduct was undertaken not as legitimate disciplinary or safety measures, but as a "pretext" and specifically as a campaign to

15

"harass," "bully," or "drive" I.B. out of the school because the school did not want a disabled student to attend. Dkt. No. 55 ¶ 3, 22–23, 51, 66, 88. Plaintiffs allege that calling the authorities and having I.B. sent to the hospital was "wholly unnecessary" and done to intentionally harm Plaintiffs and that the ACS complaint was not intended to address any purported abuse or neglect, but was a false complaint made to force I.B. and his family out of the school. *Id.* ¶¶ 35, 59, 65, 79, 82, 87. Plaintiffs allege that "Success Academy intentionally harmed I.B. simply because the Success Academy network of schools do not want disabled kids in their classrooms." *Id.* ¶ 3. Plaintiffs' allegations suggest that Cohen's conduct went far beyond what was necessary under the circumstances and was undertaken with the knowledge that I.B. was vulnerable and to inflict emotional distress such that I.B. and his family would not feel comfortable continuing to send I.B. to Success Academy.

School authorities may engage in tortious conduct where they engage in a campaign of activity that is knowingly unwarranted and intended to gratuitously cause harm to the student. *See, e.g.*, *Biswas v. City of New York*, 973 F. Supp. 2d 504, 511 (S.D.N.Y. 2013) (plaintiff stated a claim for IIED where school authorities allegedly motivated by racial animus, knowingly falsely accused high school student of sending threatening emails to teachers and fabricated evidence against her, causing her to be suspended and arrested); *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 307 (E.D.N.Y. 2016) (plaintiff stated IIED claim where school allegedly forced student to perform uncompensated work for the district on district's computer systems and, when he refused, suspended him and filed a knowingly false criminal complaint against him); *Kaul v. Brooklyn Friends Sch.*, 2022 WL 987843, at *11 (Sup. Ct. N.Y. Mar. 31, 2022) *aff'd in relevant part* 220 A.D. 3d 936 (2d Dep't 2023) (plaintiff stated claim for IIED where school nurse and dean conducted purported medical exam of plaintiff without parental

16

consent, without insuring adequate privacy, and which involved stripping her of her clothes and taking photographs of her); *M.H.B. v. E.C.F.S.*, 177 A.D. 3d 479, 479–480 (1st Dep't 2019) (plaintiff stated a claim for IIED where school allegedly knowingly submitted a false report to Child Protective Services in retaliation for family's complaints regarding race-related problems their son had experienced at the school).[7]

The Court is convinced that "the more prudent course here is to deny the motion[] to dismiss to permit the record to be better developed." *Blasetti v. Pietropolo*, 213 F. Supp. 2d 425 (S.D.N.Y. 2002).

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 56.


SO ORDERED.

Dated: July 16, 2024
          New York, New York
                                                        LEWIS J. LIMAN
                                                  United States District Judge

---

[7] On the other hand, disproportionate reactions or coercion have been found insufficient to state a claim for IIED. *See, e.g.*, *Lazar v. City of New York*, 2022 WL 2953934, at *6 (S.D.N.Y. July 26, 2022) (dismissing IIED claim where defendants filed and publicized a false police report against plaintiff alleging that he was a thief and causing him to be arrested in a violent manner when he was simply removing his personal belongings from a room he had permission to use); *Stuto*, 164 F.3d at 827–28 (affirming dismissal of IIED claim where defendant employer intentionally, recklessly or negligently ignored dispositive medical evidence that former employee was disabled, lied to him, requested that he lie during his medical examination and coerced him to return to work).